**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **HENRY J. AUGUSTUS, IV** | * | **CIVIL ACTION NO:** |
| | * | |
| | * | **JUDGE:** |
| **VERSUS** | * | |
| | * | **MAGISTRATE:** |
| | * | |
| **MERCK & CO., INC., a New** | * | |
| **Jersey Corporation** | * | |

************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Henry J. Augustus, IV, by and through his undersigned attorneys sue Defendant

Merck & Company, Inc., and allege as follows:

### I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity exists

between Plaintiff and Defendant.  Plaintiff is a resident of the State of Louisiana, and

Defendant is incorporated and has its primary place of business in the State of New

Jersey.  The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2.     Venue is proper within this district and division pursuant to 28 U.S.C. §1391, as a

substantial number of the events, actions, or omissions giving rise to the Plaintiff's

claims occurred in this district.  At all times relevant to this matter, Defendant Merck

conducted substantial business in this district.

### II.  PARTIES

3.     Plaintiff Henry J. Augustus, IV was born June 27, 1977.  At all relevant times, Plaintiff

was a resident of Baton Rouge.  Plaintiff used FOSAMAX for approximately six (6)

months.

4.      Defendant is a corporation organized and existing under the laws of the State of New

Jersey, with its principal place of business in New Jersey.  The Defendant's principal

office is located at One Merck Drive, Whitehouse Station, New Jersey.

5.      Defendant was at all relevant times authorized to conduct business in the State of

Louisiana.

6.      Defendant has regularly transacted business in the State of Louisiana and continues to do

so.

7.      At all relevant times Defendant, through its agents, servants, employees and apparent

agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a

bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis,

osteopenia, and Paget's Disease.

8.      Defendant, either directly or through its agents, apparent agents, servants or employees, at

all relevant times, sold and distributed FOSAMAX in the State of Louisiana.

9.      Defendant derives substantial revenue from pharmaceutical products used or consumed in

the State of Louisiana.

10.     Defendant expected, or should have expected, that its business activities could or would

have consequences within the State of Louisiana.

11.     Plaintiff brings this action to recover damages, restitution, refunds and/or for equitable,

relief against Defendant.

12.     Defendant placed FOSAMAX into the stream of worldwide commerce and interstate

commerce in the United States.  It did so without adequate testing and with no warning

that the drug carried with it a risk of causing osteonecrosis of the jaw.

-2-

13.    Plaintiff needs continued medical monitoring to prevent or mitigate the future onset of ostenecrosis of the jaw or treat osteonecrosis of the jaw which has already manifested.

### III.  SUMMARY OF THE CASE

14.    Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other uses.

15.    As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff Henry J. Augustus, IV, have suffered and may continue to suffer severe and permanent personal injuries, including osteonecrosis of the jaw.

16.    Defendant concealed and continues to conceal its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

17.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

18.    As a result of Defendant's actions and inaction, Plaintiff Henry J. Augustus, IV was injured due to his ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff's various injuries and damages.  Plaintiffs accordingly seek compensatory damages.

### IV.  FACTUAL BACKGROUND

19.    At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

20.     In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease.  Alendronate is marketed by Defendant Merck as FOSAMAX.

21.     FOSAMAX falls within a class of drugs known as bisphosphonates.  Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease.  Other drugs within this class, such as Aredia and Zometa, are used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

22.     There are two classes of bisphosphonates: the N-containing (nitrogenous) and the non-N-containing (non-nitrogenous) bisphosphonates.  The nitrogenous bisphosphonate include the following: pamidronate (Aredia); ibandronate (Bondronate); and alendronate (FOSAMAX).  The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid).  Alendronate contains a nitrogen atom.  The Physicians Desk Reference ("PDR") for FOSAMAX confirms that the molecule contains a nitrogen atom.

23.     Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy.  As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew or should have known that FOSAMAX, as a nitrogenous bisphosphonate, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e. those containing nitrogen).

-4-

24.   Merck knew and or should have known that bisphosphonates, including FOSAMAX,

inhibit endothelial cell function. Similarly, Merck knew or should have known that

bisphosphonates also inhibit vascularization of the affected area and induce ischemic

changes specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that

these ischemic changes appear to be cumulative in nature.

25.   Merck also knew or should have known that these factors combine to create a

compromised vascular supply in the affected area.  As a result, a minor injury or disease

can turn into a non-healing wound.  That in turn can progress to widespread necrosis

(bone death) and osteomyelitis (inflammation of bone marrow).

26.   Dentists are now being advised by dental associations to refrain from using any invasive

procedures (such as drilling a cavity) for any patient on FOSAMAX.

27.   Once the ostenecrosis begins and becomes symptomatic, it si very difficult to treat and

typically is not reversible.

28.   Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and

other dental complications among users began surfacing, indicating that FOSAMAX

shared the class effects of the other nitrogenous bisphosphonates.  Despite this

knowledge, Defendant failed to implement further study risk of osteonecrosis of the jaw

relative to FOSAMAX.  Rather than evaluating and verifying the safety of FOSAMAX

with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX,

such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX

through 2018.

29.     Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

30.     Since FOSAMAX was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of FOSAMAX.

31.     On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and aledronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

32.     As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confirmed to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

33.     As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw. Defendant has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

34.     Rather than warn patients, and despite knowledge known by Defendant about increased risk of osteonecrosis of the jaw on patients using FOSAMAX, Defendant continues to defend FOSAMAX, mislead physicians and the public, and minimize unfavorable findings.

35.     FOSAMAX is one of Defendant's top selling drugs, averaging more than $3 billion a year in sales.

-6-

36.     Consumers, including Plaintiff Henry J. Augustus, IV, who have used FOSAMAX for treatment of osteoporosis, have several alternative safer products available to treat the conditions.

37.     Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff Henry J. Augustus, IV, or the medical community, of such risks.

38.     As a direct result, Plaintiff Henry J. Augustus, IV was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX.  Plaintiff requires and will in the future require ongoing medical care and treatment.

39.     Plaintiff Henry J. Augustus, IV has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

40.     Plaintiff Henry J. Augustus, IV was prescribed and began taking FOSAMAX.

41.     Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

42.     As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe osteonecrosis of the jaw.

43.     Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

-7-

44.    Plaintiff used FOSAMAX which had been provided to him in a condition that was
substantially the same as the condition in which it was manufactured and sold.

45.    Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks
associated with the drug.  Alternatively, Plaintiff would have known the precursor events
of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation
of the symptoms as they currently exist.

46.    Defendant, through its affirmative misrepresentations and omissions, actively concealed
from Plaintiff and his physicians the true and significant risks associated with taking
FOSAMAX.  The running of any applicable statute of limitations has been tolled by
reason of Defendant's fraudulent concealment.

47.    As a result of Defendant's actions, Plaintiff and his prescribing physicians were unaware,
and could not have reasonably known or have learned through reasonable diligence, that
Plaintiff had been exposed to the risks identified in this complaint, and that those risks
were the direct and proximate result of Defendant's acts, omissions, and
misrepresentations.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION – NEGLIGENCE

48.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint
contained in paragraphs 1 through 47 above, with the same force and effect as if fully set
forth herein.

49.    At all times material hereto, the Defendant had a duty to exercise reasonable care to
consumers, including Plaintiff, in the design, development, manufacture, testing,

inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product.

50.    The Defendant breached its duty of reasonable care to Plaintiff in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

51.    Plaintiff's injuries and damages, as alleged herein, were and are the direct and proximate result of the carelessness and negligence of the Defendant.

52.    The Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

53.    The injuries sustained by the Plaintiff were caused by or were contributed to by Defendant's negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard for the safety of the consumers and the public, including Plaintiff, on the part of Defendant in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product as being safe and effective for the purposes intended and by inducing the public and Plaintiff to believe that the subject product was safe and effective for its intended purposes.

54.    As a proximate result of the aforementioned negligence of Defendant, Plaintiff, Henry J. Augustus, IV, suffered personal and economic injuries and harm, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, require medical monitoring and will be required to pay for additional necessary

-9-

healthcare, attention and services, along with additional incidental and related expenses to monitor his condition.

55.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering.  He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  He has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## SECOND CAUSE OF ACTION - CONSTRUCTION OR COMPOSITION DEFECT UNDER LA. R.S. 9:2800.55

56.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in paragraphs 1 through 55 above, with the same force and effect as if fully set forth herein.

57.    Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the subject product in a condition which rendered it unreasonably dangerous due to its propensity to cause osteonecrosis of the jaw.

58.    The subject product manufactured and/or supplied by Defendant was defective in construction or composition in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

59.    As a direct and proximate result of the use of the subject product as manufactured,

-10-

designed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiff suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

**THIRD CAUSE OF ACTION -DESIGN DEFECT UNDER LA. R.S. 9:2800.56**

60.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in paragraphs 1 through 59 above, with the same force and effect as if fully set forth herein.

61.    Defendant is the manufacturer, designer, distributor, seller, and/or supplier of the subject product.

62.    The subject product manufactured and supplied by Defendant was defective in design or formulation in that, when it left the hands of the Defendant, it did not conform to federal and/or state requirements, and the foreseeable risk of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

63.    The foreseeable risks associated with the design or formulation of the subject product includes, but are not limited to, the fact that the design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

64.    As a direct and proximate result of the use of the subject product as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiff suffered harm, damages, and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

-11-

## FOURTH CAUSE OF ACTION - INADEQUATE WARNING
## UNDER LA. R.S. 9:2800.57

65.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in paragraphs 1 through 64 above, with the same force and effect as if fully set

forth herein.

66.     The subject product manufactured and supplied by Defendant was defective due to

inadequate warning or instruction because Defendant failed to conform with federal

and/or state requirements for labels, warnings, and instructions, and Defendant knew or

should have known that the product created significant risks of serious bodily harm to

consumers and they failed to adequately warn consumers and/or their health care

providers of such risks.

67.     The subject product manufactured and supplied by Defendant was defective due to

inadequate post-marketing warning or instruction because, after Defendant knew or

should have known of the risk of serious bodily harm from the use of the subject product,

Defendant failed to provide an adequate warning to consumers and/or their health care

providers of the defects of the product, and/or failed to conform to federal and/or state

requirements for labeling, warnings and instructions, or recall, while knowing that the

product could cause serious injury.

68.     As a direct and proximate result of the use of the subject product as manufactured,

designed, sold, supplied and introduced into the stream of commerce by Defendant,

Plaintiff suffered harm, damages and economic loss as previously described and will

continue to suffer such harm, damages and economic loss in the future.

-12-

## FIFTH CAUSE OF ACTION - BREACH OF EXPRESS WARRANTY
## UNDER LA. R.S. 9:2800.58

69.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in paragraphs 1 through 68 above, with the same force and effect as if fully set forth herein.

70.    Defendant expressly warranted to Plaintiff that the subject product was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

71.    At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

72.    At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

73.    Plaintiff purchased and used the subject product for its intended purpose.

74.    Defendant breached said express warranties in that the subject product was not safe and fit for its intended use and, in fact, causes debilitating side effects.

75.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered severe and permanent physical injuries and have endured substantial pain and suffering.  He has incurred significant expenses for medical care and treatment, and will

-13-

continue to incur such expenses in the future. He has suffered a loss of earning capacity. He has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages may be permanent and will continue into the future.

## SIXTH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTIES

76.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in paragraphs 1 through 75 above, with the same force and effect as if fully set forth herein.

77.   LA. C.C. art. 2475 states that a seller "warrants that the thing sold is fit for its intended use."

78.   Defendant designed, manufactured, marketed, distributed, supplied and sold the subject product.

79.   At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold the subject product, it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

80.   Plaintiff purchased and used the subject product for its intended purpose.

81.   Due to Defendant's wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with the subject product until after they used it.

82.   Contrary to the implied warranty for the subject product, the subject product was not of merchantable quality and was not safe or fit for its intended uses and purposes.

-14-

83.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff suffered severe and permanent physical injuries and have endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. He has suffered a loss of earning capacity. He has suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages may be permanent and will continue into the future.

## SEVENTH CAUSE OF ACTION - REDHIBITION

84.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in paragraphs 1 through 83 above, with the same force and effect as if fully set forth herein.

85.    The subject product contains a vice or defect which renders it useless or its use so inconvenient that buyers would not have purchased it.

86.    Defendant sold and promoted the subject product, which they placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. The subject product sold and promoted by the Defendant possess a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous, as described above, which renders the subject product useless or so inconvenient that it must be presumed that a buyer would not have bought the subject product had he known of the defect. Pursuant to La. C.C. art. 2520, Plaintiff is entitled to obtain a recision of the sale of the subject product.

-15-

87.     The subject product alternatively possesses a redhibitory defect because the product was

        not manufactured and marketed in accordance with industry standards and/or was

        unreasonably dangerous, as described above, which diminishes the value of the subject

        product so that it must be presumed that a buyer would still have bought it but for a lesser

        price.  In this instance, Plaintiff is entitled to a reduction of the purchase price.

88.     Defendant is liable as a bad faith seller for selling a defective product with knowledge of

        the defect and thus are liable to Plaintiff for the price of the subject product, with interest

        from the purchase date, as well as reasonable expenses occasioned by the sale of the

        subject product, and attorneys' fees.  As the manufacturer of the subject product, under

        Louisiana law, Defendant is deemed to know that the subject product possessed a

        redhibitory defect.  La. C.C. art. 2545.

## EIGHTH CAUSE OF ACTION -VIOLATION OF NEW JERSEY CONSUMER PROTECTION STATUTES

89.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

        contained in paragraphs 1 through 88 above, with the same force and effect as if fully

        set forth herein.

90.     Defendant engaged in commercial conduct by selling the subject product.

91.     Defendant misrepresented and omitted material information regarding the subject

        product by failing to disclose known risks.

92.     Defendant's misrepresentations and concealment of material facts constitute

        unconscionable commercial practices, deception, fraud, false pretenses,

        misrepresentation, and/or the knowing concealment, suppression, or omission of

-16-

materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New Jersey law.

93.    New Jersey has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices.  Defendant violated these statutes by knowingly and falsely representing that the subject product was fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

94.    Upon information and belief, Defendant engaged in the deceptive acts and practices alleged herein in New Jersey in order to sell the subject product to the public, including Plaintiff.

95.    As a direct and proximate result of Defendant's violations of New Jersey law and other various consumer protection statutes, Plaintiff has suffered damages, for which Plaintiff is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

96.    Provisions of New Jersey state law are applicable here as surrogate Louisiana law under Louisiana conflict of law provisions and Plaintiff is therefore entitled to and therefore prays for the recovery of punitive and/or exemplary damages as allowed for by New Jersey law.

## CAUSE OF ACTION
## MEDICAL MONITORING AND NOTIFICATION PROGRAM

97.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint
        contained in paragraphs 1 through 96 above, with the same force and effect as if fully
        set forth herein.

98.     As a proximate result of Defendant's actions and omission described above, Plaintiff
        has been exposed to an increased risk of serious injury.  This increased risk makes
        periodic diagnostic medical examinations and procedures reasonably necessary.  Users
        and prior users of the subject product need to be monitored periodically.  Such
        monitoring is usually done in a doctor's office, visits to which create an expense.

99.     Due to the liability of Defendant as pleaded in the preceding causes of action, one
        element of Defendant's  responsibility and of the damages sought in this case is the
        establishment of a court-approved program funded to pay for the costs of monitoring
        users for potential injuries due to the defects in the subject product.  Such relief is
        allowed by La. C.C. Art. 2315(B).

### TENTH CAUSE OF ACTION - UNJUST ENRICHMENT

100.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint
        contained in paragraphs 1 through 99 above, with the same force and effect as if fully
        set forth herein.

101.    Defendant has benefitted and been unjustly enriched by the above-alleged conduct.
        Defendant has sold the subject product thereby reaping benefits and profits from
        consumers statewide as a result of these sales.

-18-

102.    Defendant has knowledge of these benefits and has voluntarily accepted and retained these benefits.

103.    The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits without paying the value thereof to Plaintiff.

104.    Plaintiff is entitled to the amount of Defendant's ill-gotten gains, including interest, resulting form Defendant's unlawful, unjust and inequitable conduct in selling the subject product to Plaintiff.

### ELEVENTH CAUSE OF ACTION - PUNITIVE DAMAGE CLAIM

105.    Plaintiff realleges and incorporate by reference the foregoing paragraphs as if set forth herein and further allege as follows:

106.    Upon information and belief,  provisions of other state law are applicable here as surrogate Louisiana law under Louisiana conflict of law provisions and plaintiff is therefore entitled to and therefore pray for the recovery of punitive and/or exemplary damages based on the willful, wreckless, wanton and/or egregious nature of the conduct of the defendants that occurred in other states.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Merck & Co., Inc. as follows:

a.    Damages in an amount to be determined at trial;

b.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

-19-

d.     The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees;

e.     Interest on any award of costs and attorneys fees;

f.     All statutory damages;

g.     Disgorgement of the Defendant's profits from the sale of the subject product;

h.     Such other and further relief available under all applicable state or federal law and any relief the Court deems just and appropriate.

Plaintiff further requests a trial by jury.


Respectfully submitted,

BOHRER LAW FIRM, L.L.C.
8712 Jefferson Highway
Suite B
Baton Rouge, Louisiana 70809
Telephone: 225/925-5297


By: _____
       Philip Bohrer (Bar Roll No.: 14089)
       Scott E. Brady (Bar Roll No.: 24976)

-20-